IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LM Insurance Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>High End General Services LLC, and Odair Nolsen Da Silva,<br><br>Defendants. | C.A. No.: 2:24-cv-01344-BHH<br><br>**COMPLAINT**<br>**(Non-Jury Trial)** |

Plaintiff LM Insurance Corporation (LM), by and through its undersigned attorney, complaining against Defendant High End General Services LLC (HEGS) and Defendant Odair Nolsen Da Silva (Da Silva), alleging as follows:

1. Plaintiff LM is a corporation organized and existing under the laws of the State of Illinois. LM is a wholly owned subsidiary of Liberty Mutual Group, Inc. (LMG), which is a company organized and existing under the laws of the Commonwealth of Massachusetts.

2. Defendant Da Dilva, at all times relevant, was a resident of Berkeley County, South Carolina, is of full age, suffers no legal disability, and is neither a member nor a dependent of the armed forces of the United States of America.

3. Defendant HEGS is a South Carolina company doing business in South Carolina and having a registered office address of 307 Cheryl Lane, Summerville, South Carolina 29486.

4. Defendant Da Silva is the registered agent and member of HEGS is Defendant Da Silva.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331(a) based on diversity of citizenship between the parties and an amount in controversy greater than $75,000.00.

6.      This cause of action also arises under the common law of the State of South Carolina. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

**FACTUAL BACKGROUND**
**South Carolina's NCCI Coverage**

8.      In South Carolina, virtually all employers (with exceptions that are not relevant here) are required to maintain workers' compensation insurance coverage pursuant to South Carolina Code Ann. Section 42-1-10, *et seq*. Some companies are not able to obtain workers' compensation insurance coverage in the voluntary market. When an employer in South Carolina is unable to obtain workers' compensation insurance coverage via the voluntary market, the employer may apply for coverage under the National Council on Compensation Insurance (NCCI), the administrator for South Carolina's assigned-risk insurance marketplace (NCCI Plan).

9.      During the time relevant to this case, Plaintiff was a servicing carrier authorized to issue policies and to provide insurance services to employers seeking workers' compensation insurance coverage through the NCCI Plan.

10.     In order to apply for coverage under the NCCI Plan, an employer must submit a written application to the administrator of the NCCI Plan and pay an estimated premium deposit based primarily upon information known at that time only by the employer.

11.     The standard application form to obtain insurance under the NCCI Plan must be completed by the applying employer. That application requires:

a.     Complete underwriting information and reasonable payroll estimates;

b.     A statement that the employer will maintain complete records of payroll transactions in such form as the insurance company may reasonably require, and that such records will be made available to the insurance company by the employer upon request;

c.     A statement that the employer will comply with all reasonable recommendations of the insurance company relating to the welfare, health and safety of employees; and

d.     Payment of the appropriate deposit premium.

12.     Upon receipt of the application and premium deposit, the NCCI Administrator issues a written insurance binder to the employer and randomly designates an insurance carrier to issue the policy.

13.     The designated carrier then issues a policy of workers' compensation insurance in its own name to the employer.

14.     Because the employer's actual premium must match the risk being insured by the insurance carrier over the relevant time period, the estimated premium stated on the application provided to the NCCI Plan is subject to audit, as stated in the binder and in the policy itself.

**Defendant's Policy**

15.     Upon information and belief, Defendant Da Silva operates a residential building businesses and provides services in several counties in South Carolina related to residential construction.

16. On February 23, 2021, Defendant Da Silva applied for and was assigned workers' compensation insurance coverage through the NCCI Plan.

17. Defendant Da Silva listed himself on the application as the member of Defendant HEGS with 100% ownership in HEGS.

18. Defendant Da Silva as the sole member of Defendant HEGS described HEGS duties as "carpentry construction of residential dwellings not exceeding three stories in height" with 0 full time or part time employees; and 0 in estimated annual remuneration/payroll.

19. On behalf of Defendant HEGS, Defendant Da Silva also indicated HEGS would not be involved in any roofing.

20. On behalf of Defendant HEGS, Defendant Da Silva also indicated 80% of HEGS work would be done by "insured" subcontractors.

21. The NCCI Plan designated Plaintiff as the issuing carrier for HEGS for workers compensation coverage.

22. Coverage was placed with Plaintiff, and the policy had an effective date of November 20, 2021.

23. This was the Defendants first policy with Plaintiff, and the policy number was WC5-33S-B21C8M-011 (Policy).

24. Policy was in effect from November 20, 2021, to November 20, 2022, 12:01 a.m. standard time (Policy Period).

**Necessary Audits**

25. As part of the NCCI Plan, Plaintiff must complete an audit after policy expiration to ensure that the correct premiums were charged and collected from an insured.

26. Premiums calculated at audit are based on the defendants actual operations during the policy periods.

27. An insurer relies on information related to a company's financial records to determine the appropriate premium to charge the company for the applicable insurance coverage.

28. Upon expiration or cancellation of a policy, workers' compensation insurance carriers typically perform an audit in order to determine the final premium.

30. The final earned premium is based upon the incurred or actual payroll for the policy period, the classifications of employees, classification rates, and the insured's experience modification, among other factors.

31. Insureds such as Defendants are required to keep and provide records when requested pursuant to Part 5, Section G of Plaintiff's insurance policy.

32. Specifically, Part 5, Section G of Plaintiff's policy contains the following language pertaining to audits:

> G.    Audit
>
> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audit during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

**Audit of Defendant**

33. On January 10, 2023, Plaintiff sent HEGS a Final Audit Exhibit. In the Final Audit Exhibit, Plaintiff informed HEGS that Plaintiff was unable to calculate HEGS' actual premium because HEGS failed to comply with the final audit.

34. HEGS failed to provide any information in response to the January 10, 2023 correspondence from Plaintiff.

### Post Audit Determination

35. Plaintiff determined that HEGS received at least $1,672,920 during the policy period which generated additional premiums in the amount of $327,803.00.

36. On May 17, 2023, Plaintiff sent correspondence to HEGS explaining that Plaintiff had determined HEGS owed at least an additional $327,803.00 due to HEGS' increased exposure as determined by Plaintiff's research.

37. Defendants were aware of their obligations to cooperate with Plaintiff under Policy.

38. Despite these contractual obligations, Defendants willfully refused to cooperate with Plaintiff in the conducting of the necessary audits.

### FIRST CAUSE OF ACTION - BREACH OF CONTRACT

39. The preceding paragraphs are re-alleged and incorporated by reference as if fully rewritten herein.

40. Plaintiff offered workers' compensation insurance coverage to Defendants.

41. Plaintiff's offer was based upon information from Defendants that Plaintiff believed was accurate.

42. Defendants accepted Plaintiff's offer to provide workers' compensation insurance to Defendants by accepting the terms of the Policy and paying the premium.

43. Plaintiff provided workers compensation insurance coverage to Defendants during the Policy Period for Policy.

44. Policy placed a binding duty, codified in Part 5, Section G, upon Defendants that required Defendants to provide certain information to Plaintiff upon demand.

45. Policy provided for termination of the contract and cancelation of the Policy if Defendants did not comply with the terms of the Policy.

46. Defendants breached the contract by their failure to provide Plaintiff with requested information in connection with Plaintiff's audits.

47. Defendants breached the contract by its failure to provide Plaintiff with reasonable access to its files and records for audit or inspection purposes.

48. Defendants breached its insurance contracts with Plaintiff by doing one or more of the following:

   a. Improperly reporting wages paid during audits;

   b. Failing to provide tax returns;

   c. Failing to provide complete and accurate audit information to Plaintiff;

   d. Failing to cooperate with Plaintiff's auditor; and

   e. In other ways that will be proven in this lawsuit.

49. As a direct and proximate result of Defendants' breach of contract, Plaintiff has been damaged in excess of $75,000.00 (SEVENTY-FIVE THOUSAND DOLLARS).

50. Plaintiff is entitled to recover its damages suffered as a result of Defendants' breach of contract from Defendants.

**SECOND CAUSE OF ACTION – UNJUST ENRICHMENT**

51. The preceding paragraphs are re-alleged and incorporated by reference as if fully rewritten herein.

52. Upon information and belief, each of Defendants are or were involved in the business of residential construction in South Carolina.

53. Upon information and belief, Defendants are required to maintain workers' compensation insurance coverage pursuant to South Carolina Code Ann. Section 42-1-10, *et seq*.

54. Upon information and belief, Defendants used Policy issued by Plaintiff to satisfy the requirement for workers' compensation insurance.

55. Workers' compensation insurance is a measurable benefit to any entity that purchases such insurance.

56. Upon information and belief, Plaintiff conferred a measurable benefit on Defendants as a result of issuing the policy.

57. Plaintiff did not confer the benefit of workers' compensation insurance on Defendants officiously or gratuitously.

58. Defendants were unjustly enriched by accepting the benefit of workers' compensation insurance from Plaintiff.

59. Plaintiff is entitled to recover the amount which it should have received from Defendants for the value of the workers' compensation policy that would have been provided to Defendants had Defendants properly contracted for and purchased such policy.

60. As a direct and proximate result of such unjust enrichment, Plaintiff has been damaged in excess of $75,000.00 (SEVENTY-FIVE THOUSAND DOLLARS).

61. Plaintiff is entitled to recover its damages suffered as a result of Defendants' unjust enrichment.

WHEREFORE, Plaintiff prays unto the court for the following relief:

A. That this Court order Defendants to comply with the terms of the insurance contract between the parties;

B.  That this Court order Defendants to provide Plaintiff access to all documentation required to perform their audits;

C.  That this Court award Judgment in favor of Plaintiff against Defendants in an amount in excess of $75,000.00;

D.  That such judgment in favor of Plaintiff against Defendants bear such interest as provided by law;

E.  That the costs of this action be taxed against Defendants, including attorney's fees;

F.  That this Court pierce the corporate veil and hold Defendant Da Silva personally liable for the acts of the Defendant Entities;

G.  That this Court hold the Defendants jointly and severally liable for Plaintiff's damages; and

H.  That Plaintiff have such other and further relief as the Court deems just and proper.

                        s/James P. Sullivan
                        James P. Sullivan (Fed ID # 10765)
                        HOWSER NEWMAN & BESLEY LLC
                        215 East Bay Street, Suite 303
                        Charleston, South Carolina 29401
                        843.216.6940
                        jsullivan@hnblaw.com
                        **Counsel for Defendant LM Insurance Corporation**

March 20, 2024